UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION |
| V. | NO. 11-48 |
| HENRY M. MOUTON | SECTION "F" |

ORDER AND REASONS

Before the Court is the defendant's motion for discovery, which the Court took under submission pending study of the parties' supplemental papers addressing whether prosecutorial misconduct invalidates a guilty plea as a matter of due process law.[1] For the reasons that follow, and for those previously announced of record, the defendant's motion for discovery is DENIED.

**Background**

The facts of this case are more thoroughly summarized in this Court's June 5 Order and Reasons. As the Court previously observed, this white-collar criminal case presents a troublesome issue concerning a defendant's post-plea right to inquire into investigatory findings regarding prosecutorial misconduct.

---

[1] On June 5, 2013 the Court observed "This discovery motion infers one unprecedented question: assuming prosecutorial misconduct, does such conduct invalidate Mouton's candid and deliberate guilty plea as a matter of law? The case literature offers no easy guide."

1

On June 5, 2013 the Court granted the defendant's motion to continue his sentencing hearing and denied, without prejudice, his request for discovery.  The Court ordered counsel to brief within seven days the following issue:

> Assuming prosecutorial misconduct, does such conduct structurally invalidate Mouton's guilty plea as a matter of due process constitutional law?

The Government answers this question in the negative, noting that very few errors have been held to be structural, and the U.S. Supreme Court and Fifth Circuit have consistently refused to recognize prosecutorial misconduct as a structural error.  On the other hand, the defendant answers affirmatively:  "Yes, such egregious misconduct would constitute structural due process violations that invalidate [Mouton's] plea and, further, could demand dismissal of the entire indictment with prejudice."  Neither side offers up precedent that gives the Court much insight, but that is likely due to the bizarre circumstances presented to the Court, and the context in which the Court considers whether it should permit a defendant (who has sworn under oath, and does not now retract, "I am guilty" after intense judicial inquiry) discovery into prosecutorial misconduct.

I.

Rule 52(a) of the Federal Rules of Criminal Procedure provides that harmless errors -- errors that do not affect substantial rights -- will be disregarded. Fed.R.Civ.P. 52(a).  By its terms,

this Rule applies to all errors where a proper objection is made at trial; indeed, the Supreme Court has observed that "most constitutional errors [are] harmless." See Neder v. United States, 527 U.S. 1, 8 (1999); Arizona v. Fulminante, 499 U.S. 279 306, (1991)("Since this Court's landmark decision in Chapman v. California, 386 U.S. 18 (1967), in which we adopted the general rule that a constitutional error does not automatically require reversal of a conviction, the Court has applied harmless-error analysis to a wide range fo errors and has recognized that most constitutional errors can be harmless").  Thus, "if the defendant had counsel and was tried by an impartial adjudicator, there is a strong presumption that any other [constitutional] errors that may have occurred are subject to harmless-error analysis." Neder, 527 U.S. at 8 (citation omitted).  Nevertheless, the Supreme Court has "recognized a limited class of fundamental constitutional errors that 'defy analysis by 'harmless error' standards'". Id. at 7 (citing Arizona v. Fulminante, 499 U.S. 279 (1991)).  "Errors of this type are so intrinsically harmful as to require automatic reversal (i.e., 'affect substantial rights') without regard to their effect on the outcome." Id.

Thus, the Supreme Court categorizes constitutional violations at one end of the spectrum as "trial errors", which "occur during the presentation of the case to the jury and [are] amenable to harmless-error analysis because [they] may ... be quantitatively

3

assessed in the context of other evidence presented in order to determine [the effect it had on the trial]." Brecht v. Abrahamson, 507 U.S. 619, 629 (1993). But "[a]t the other end of the spectrum of constitutional errors lie 'structural defects in the constitution of the trial mechanism, which defy analysis by harmless-error standards.'" Id. "The existence of such defects requires automatic reversal of the conviction because they infect the entire trial process." Id. at 629-30 ("[p]ut another way, these errors deprive defendants of 'basic protections' without which 'a criminal trial cannot reliably serve its function as a vehicle for determination of guilt or innocence....'").[2] Examples of these structural errors that defy harmless-error analysis include a complete denial of counsel, a biased trial judge, denial of self-representation at trial, denial of a public trial, defective reasonable doubt instruction, unlawful exclusion of members of the defendant's race from a grand jury. Neder, 527 U.S. at 8 (citing cases). Errors such as the breach of a plea deal by the government or Rule 11 violations, such as improper participation by the court in plea discussions, are not treated as structural errors. See Puckett v. United States, 556 U.S. 129 (2009); see also United States v. Davila, No. 12-167, --- S.Ct. ---

---

[2]"The very premise of structural-error review is that even convictions reflecting the 'right' result are reversed for the sake of protecting a basic right." Neder, 527 U.S. at 24 (Scalia, J., concurring in part and dissenting in part).

2013 WL 2631064, at *10-11 (June 13, 2013); see also United States v. Dominquez Benitez, 542 U.S. 74, 81 n.6 (2004)("The omission of a single Rule 11 warning without more is not colorably structural").[3]

The question becomes whether prosecutorial misconduct "will *always* render a trial unfair" such that it is subject to structural error review. Cf. Neder, 527 U.S. at 9 (emphasis in original) (observing that "omit[ting] an element of the offense [in a jury instruction] does not *necessarily* render a criminal trial fundamentally unfair or an unreliable vehicle for determining guilt or innocence"). The answer is, simply, no. Unlike the deprivations such as the complete denial of counsel or a trial that proceeds with a biased trial judge, the case literature instructs that prosecutorial misconduct is not such an error that defies harmless-error review. Rather, as a general rule, and to the extent the case literature can be said to be a guide, prosecutorial misconduct falls into the category of trial, rather than structural, error and is judicially reviewed for harmless error. See Bank of Nova Scotia v. United States, 487 U.S. 250, 255 (1988)(district court had no authority to dismiss the indictment

---

[3]The Supreme Court has also declined to designate as structural errors in which the court failed to instruct the jury about a criminal law's enactment date, even though the error created the risk that the jury erroneously convicted the defendant based exclusively on noncriminal, preenactment conduct. See United States v. Marcus, 560 U.S. 258 (2010).

5

based on prosecutorial misconduct before the grand jury, absent a finding of prejudice). In fact, the rule of this Circuit instructs that even in the case of the most "egregious prosecutorial misconduct," the indictment may be dismissed only "upon a showing of actual prejudice to the accused." <u>United States v. McKenzie</u>, 678 F.2d 629, 631 (5th Cir. 1982)(defendant must show prejudice before court will dismiss an indictment on either constitutional or supervisory grounds), <u>rehearing and rehearing en banc denied</u>, 685 F.2d 1386 (1982), <u>cert. denied</u>, 459 U.S. 1038 (1982).[4]

These well-settled principles notwithstanding, the case literature indicates, at least in loose dicta, that "in the rarest of circumstances", government misconduct could be "'so outrageous' that it violates the principle of 'fundamental fairness' under the due process clause of the Fifth Amendment" and dismissal of an indictment is warranted. <u>See</u> <u>United States v. Asibor</u>, 109 F.3d 1023, 1039 (5th Cir. 1997); <u>see</u> <u>also</u> <u>United States Carriles</u>, 541 F.3d 344, (5th Cir. 2008)(holding that government did not engage in fraud, trickery, and deceit or outrageous conduct in conducting naturalization interview; conduct did not support the drastic remedy of dismissal of the indictment). The outrageous government

---

[4] The Fifth Circuit applies a two-step test to claims of prosecutorial misconduct:  (1) did misconduct occur; and (2) did that misconduct prejudice the defendant. <u>United States v. Davis</u>, 609 F.3d 663, 677 (5th Cir. 2010).

conduct doctrine,[5] typically considered in the context of circumstances suggestive of entrapment by law enforcement officials, requires that the defendant meet "an extremely high burden of proof" and show that "government overinvolvement combined with a passive role by the defendant."  See id. (even assuming government agents both supplied the drugs to defendants and then bought them back with government funds, the defendant failed to show that the government was over-involved in the drug conspiracy or that he was nothing more than a passive participant).[6]

---

[5]The Supreme Court recognized the existence of this potential defense in United States v. Russell, 411 U.S. 423, 430 (1973)("we may someday be presented with the situation in which the conduct of law enforcement agents is so outrageous that due process principles would absolutely bar the government from invoking judicial process to obtain a conviction") and Hampton v. United States, 425 U.S. 484, 487 (1976).  But, as at least one court has observed, the validity of the doctrine is on shaky ground.  See United States v. Valdez, No. 06-60074, 2011 WL 7143468, at *50 n.28 (W.D. La. Dec. 30, 2011)("the current trend in the courts of appeals seems to question the continuing validity of the doctrine itself").

[6]In addition to these cases that seem to be confined to the entrapment context, the Supreme Court has also noted, in dicta, that
> [W]e note that we are not faced with a history of prosecutorial misconduct, spanning several cases, that is so systematic and pervasive as to raise a substantial and serious question about the fundamental fairness of the process which resulted in the indictment.

Bank of Nova Scotia v. United States, 487 U.S. 250, 259 (1988).  Of course, the high court ultimately held that the district court had no authority to dismiss the indictment based on prosecutorial misconduct before the grand jury, absent a finding of prejudice.

II.

Suffice it to say that the facts of this case and, in particular, the post-guilty plea context of Mouton's request for discovery hardly fit neatly into any of these categories. On the one hand, based on the case literature, the Court is not persuaded that even egregious prosecutorial misconduct is subject to structural error review (automatic reversal). See United States v. McKenzie, 678 F.2d 629, 631 (5th Cir. 1982), rehearing and rehearing en banc denied, 685 F.2d 1386 (1982), cert. denied, 459 U.S. 1038 (1982). On the other hand, however, this is not a run-of-the-mill prosecutorial misconduct case in which counsel for the government made some offending gratuitous remarks before the jury; even so, sometimes such errors are not harmless. See Chapman v. California, 386 U.S. 18 (1976)(declining to adopt a rule of automatic reversal for improper comments regarding defendant's failure to testify, but finding such comments harmful under the circumstances).

Worse, and putting the Court in the awkward and advisory position of confronting Mouton's discovery request, Mouton does not now challenge the validity of his plea. Mouton's request for discovery cannot be divorced from the context in which it is made: he does not now challenge the knowing, voluntary, and intelligent nature of his plea. The record illuminates an intense fact-specific guilty plea. How will the discovery into the bad acts of Perricone and Mann (and perhaps others) cast doubt on the validity

8

of his plea and prejudice him?  It is difficult for the Court to speculate how he might show prejudice from the extent of any misconduct he might uncover in discovery.  And this renders his request academic.

To be sure, Mouton is in a serious and unenviable and, arguably, illogical position.  The Court is not wholly without empathy for Mr. Mouton's predicament[7]:  seek to withdraw his guilty plea and, if permitted, risk the possibility of a full-blown trial to test the Government's proof against him as the only conspirator; or, proceed to sentencing, and be the lone conspirator to submit to punishment (and its attendant status as a federal convict) for a closed conspiracy investigation.  But Mouton's legal position in the context of his post-plea discovery request has no discernible foundation in precedent.

As this Court has previously observed:  "It is well-settled that '[w]hen a defendant enters a voluntary and unconditional guilty plea, the plea has the effect of waiving all nonjurisdictional defects in the prior proceedings.'"  United States v. Daughenbaugh, 549 F.3d 1010, 1012 (5th Cir. 2008)(quoting United States v. Stevens, 487 F.3d 232, 238 (5th Cir. 2007), cert. denied, U.S. , 128 S.Ct. 336, 169 L.Ed.2d 236 (2007)).  And, "[t]he plea waives claims of governmental misconduct during the

---

[7]At worst, it further undermines the integrity of the Department of Justice in its handling of the entire matter.

9

investigation and improper motives for prosecution." United States v. Cothran, 302 F.3d 279, 286 (5th Cir. 2002)(citing United States v. Owens, 996 F.2d 59, 60 (5th Cir. 1993)).

Mouton simply has not shown on what grounds the Court may permit post-plea discovery in order for him to potentially discover the extent of the online blogging scandal (and, frankly, to otherwise discover the quality of the Government's proof).[8] To the contrary:

> [T]his Court has found that the Constitution, in respect to a defendant's awareness of relevant circumstances, does not require complete knowledge of the relevant circumstances, but permits a court to accept a guilty plea, with its accompanying waiver of various constitutional rights, despite various forms of misapprehension under which a defendant might labor.

United States v. Ruiz, 536 U.S. 622, 630 (2002)(citations omitted).

Even if the Court granted Mouton discovery, he has failed to suggest how (even assuming the suspected governmental misconduct), he was prejudiced when, as this Court has underscored, he entered a knowing, voluntary, and intelligent plea of guilty after a withering judicial inquiry in a public court proceeding while under oath.

Accordingly, the defendant's motion for discovery is DENIED

---

[8] "We find no requirement in the Constitution that a defendant must be permitted to disown his solemn admissions in open court that he committed the act with which he is charged simply because it later develops that the State would have had a weaker case than the defendant had thought...." Brady v. United States, 397 U.S. 742, (1970).

and his sentencing hearing will proceed.

New Orleans, Louisiana, June 20, 2013.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE